**CITY OF COOKEVILLE,**
**Plaintiff-Appellee,**

v.

**Cordell SMITH and wife, Fannie Smith,**
**Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

June 28, 1974.

Certiorari Denied by Supreme Court
March 24, 1975.

John H. Poteet, Cookeville, for plaintiff-appellee.

Joseph L. Lackey, Jr., Nashville, for defendants-appellants.

## OPINION

SHRIVER, Presiding Judge.

### The Case

On November 30, 1972, the City of Cookeville filed a condemnation petition in the Circuit Court of Putnam County, to acquire a tract of land located in the First Civil District of Putnam County, comprising the home and 30.56 acres of land belonging to defendants, Cordell Smith and wife. The First National Bank of Cookeville was made a party defendant by reason of the fact that they held certain deeds of trust to said land securing an indebtedness of approximately $10,000.00.

After a hearing, the right to condemn said property was upheld by the Court and an order of taking was entered, whereupon, the defendants, Cordell Smith and wife, perfected their appeal to this Court and have assigned error.

### The Pleadings

The condemnation petition filed herein alleges that the City of Cookeville is about to begin a public works project through a cooperative effort between the City and the United States Department of Housing and Urban Development through its Model Cities Program, and the United States Department of Agriculture through its Soil Conservation Service. The purpose of the project is to establish a watershed reservoir for flood control and a multi-purpose recreational facility for the use of the general public.

It is alleged that, in order to construct said project, it is necessary that certain land belonging to the defendants, Cordell Smith and wife, be acquired.

It is further alleged that, pursuant to Section 23–1526, T.C.A., petitioner has determined that the fair market value of the property and interests being acquired is $45,860.00, which is deposited with the Clerk of the Circuit Court of Putnam County, whereupon, petitioner alleges that it is entitled to acquire possession of the property sought.

The answer of the defendants, Cordell Smith and wife, after admitting the statistical data asserted in the bill, denies that the City of Cookeville has the power of eminent domain to the extent it seeks to exercise same with respect to defendants' property; that the determination to acquire all of defendants' property in fee simple was an arbitrary and capricious determination that should be overturned by the Court; that the City of Cookeville had not complied with requirements of the Uniform Relocation and Land Acquisition Policies Act of 1970, a Federal Act governing all acquisition wherein Federal funds are used; and it is prayed that the Court stay the issuance of the order sustaining the condemnation petition and appointing a Jury of View and the issuance of a writ of possession pending a hearing.

### Assignment of Error

There is a single assignment of error, as follows:

"The Court erred in finding that the Relocation Plan adopted by the City of Cookeville met the requirements of 42 U.S.C. § 4691 [4625], because said Plan makes no reference to relocation for displaced persons who own farms."

## The Facts

We have before us a narrative Bill of Exceptions with certain exhibits comprising correspondence between the City and the defendants, Cordell Smith and wife, and their attorney.

The Bill of Exceptions recites that the case was heard on May 25, 1973 before the Honorable Scott Camp, Chancellor, sitting by interchange for Honorable Thomas H. Haile, Circuit Judge; that the issues raised were that the property was not needed for the construction of the public improvement and that the provisions and requirements of the Uniform Relocation and Real Property Acquisition Policies Act of 1970 had not been complied with.

It was stipulated that the other allegations in the petition were factual and need not be proved except as to the value of the property condemned. It was further stipulated that Resolutions bearing Nos. 187, 229 and 272, and an information brochure relating to the Uniform Relocation Act of 1970 would be introduced as exhibits for the plaintiff.

Plaintiff's witness, Mr. Treadwell, testified that a resolution of the City Council authorized the construction of the lake and park project in question; that the name of the project is the Cane Creek Improvement Project, and that Federal financial assistance to the extent of $997,500.00 was being made available for the project.

The witness testified that the land owned by the defendants, Mr. and Mrs. Smith, was necessary in order to carry out the project and a map showing the reservoir area was introduced.

The next witness for plaintiff was Mr. Mike Patterson, Director of the Office of Community Development, with the duty to coordinate and carry out the Cane Creek Project. His work included the development of a Relocation Plan for the dispossessed persons in the project. In addition, it was his duty to secure the necessary services to administer the Relocation Plan, in pursuance of which duty he chose the Cookeville Housing Authority to administer same. He stated that this Agency had, as a part of its staff, qualified individuals with expertise in the field of relocation and he testified that adequate funds were provided in the Relocation Plan to pay for services that were rendered by the Cookeville Housing Authority and to pay any and all relocation benefits that would be due residents that were displaced by the Cane Creek Project and that the Relocation Plan had been expressly approved by the United States Department of Housing and Urban Development.

Mr. Patterson testified that he had attempted to discuss relocation with Mr. Smith and that Mr. Smith became hostile and told him that he was not planning on selling the property and that Mr. Patterson should get off his land and that he was not going to relocate.

The witness further testified that he had an updated listing of available housing but that Mr. Smith refused to discuss the matters with him and that, in addition to talking to Mr. Smith, several letters were sent to him to acquaint him with and urge him to use relocation benefits available to him and said letters are made Exhibits 1 through 5 to his testimony. He also made the Relocation Plan an exhibit to his testimony.

On cross-examination, he testified that he had not offered Mr. Smith any specific pieces of property because the defendant refused to discuss the matter with him. He stated that the Cookeville Housing Authority had maintained a listing of farms and houses that were available as possible relocation units as residences and for farm purposes but that Mr. Smith had consistently refused to cooperate and had ordered all persons involved in the project to stay off his land.

The defendant, Cordell Smith, admitted that he received the letters made Exhibits 1

through 5; that he had talked to Mr. Patterson and told him that he did not desire to sell his property to the City of Cookeville; that Mr. Patterson did not offer any property in which to relocate him and his wife, and that Mr. Patterson became irritated and told him that if he did not get off of the property, they would send a bulldozer in and push him out.

On recall, Mr. Patterson denied any statement to the effect that, if Mr. Smith did not get off the property, they would send a bulldozer out and push him off.

### Chancellor's Opinion

After taking the matter under advisement, the Chancellor, on October 4th, 1973, filed the following Memorandum Opinion:

### MEMORANDUM OPINION

"I heard this case at Cookeville on May 25, 1973 sitting by interchange with Honorable Thomas H. Haile, Circuit Judge. Time was granted for briefs and the final brief was filed on September 25, 1973.

On January 16, 1973, the Circuit Judge ordered that a hearing be had upon petitioner's right to acquire the involved land, and he stayed such right as the petitioner might have to enter an order sustaining the condemnation petition, to enter an order of taking, a writ of possession, and for a jury of view pending such hearing.

At the May 25th hearing before me, the defendants contended that there was no Relocation Plan for the project which was sufficient and which complied with the Federal law. The only other question was that the petitioner did not offer any proof that affirmative steps were taken to offer the defendants any alternatives as to where the defendants might be relocated.

As to whether or not there was a sufficient Relocation Plan, the evidence in the case speaks for itself. For me to comment upon and review the evidence at this level is not necessary nor is such required. I hold that the petitioner had adopted a sufficient Relocation Plan for all persons to be displaced by this project.

I further hold that the petitioner attempted to make available to the defendants, Cordell Smith and wife, Fannie Smith, adequate relocation assistance. Mr. Smith testified that he told the officials who contacted him that he was not interested in the project and that he refused to discuss it. On cross-examination Mr. Smith testified that he knew that the lake was being planned but that he was not interested in the project and that he ordered the persons engaged in the project to stay off his land.

I hold that the City of Cookeville was ready, willing and able to assist the Smith family in becoming relocated. The City would have rendered such assistance. The offers to help were refused by the Smiths. In that situation and on account of the attitude of the Smiths, there was nothing further that the City could do. I hold that the City of Cookeville was and is in substantial compliance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. [§] 4601.

I further hold that the tract of land described in the petition and containing 30.56 acres, more or less, is essential for the construction of the public works project described in the petition, and that it is essential that the same be condemned for use in said project.

Let an order of taking, an order sustaining the condemnation petition, and ordering a jury of view be prepared. A writ of possession will issue in favor of the City of Cookeville.

The Circuit Court Clerk at Cookeville, Tennessee, will file this Memorandum Opinion as a part of the technical record in the cause, but same need not be copied

on the Minutes nor incorporated in the decree.

Done at Chambers at Sparta, Tennessee, on this the 3rd day of October, 1973.

. /s/Scott Camp

SCOTT CAMP. CHANCELLOR, sitting by interchange for HONORABLE THOMAS H. HAILE, CIRCUIT JUDGE"

Thereafter, on November 6th, an Order of Taking was entered, from which an appeal was prayed and perfected.

## Our Conclusions

The Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601, sets out certain requirements on any condemning agency where the Program is financed in any degree by Federal funds.

Section 4625 states, in part, as follows:

"Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall provide a relocation assistance advisory program for the displaced person which shall offer the services described in subsection (c) of this section . . ."

Subsection (c) states, in part as follows:

"(c) Each relocation assistance advisory program required by subsection (a) of this section shall include such measures, facilities, or services as may be necessary or appropriate in order to—

(1) determine the need, if any, of displaced person for relocation assistance;

(2) provide current and continuing information on the availability, prices, and rentals of comparable decent, safe, and sanitary sales and rental housing, and of comparable commercial proper-

ties and locations for displaced businesses;

(3) * * *

(4) assist a displaced person from his business or farm operation in obtaining and becoming established in a suitable replacement location."

Counsel for the appellants insist that the foregoing provisions of the Federal Act were not complied with by the petitioner in this case and that, therefore, said petitioner should be denied the right to take the property of the defendants by eminent domain.

See *County Hwy. Comm. v. Smith, 61 Tenn.App. 292, 454 S.W.2d 124 (1970),* where it was held that failure to comply with a Federal Statute did not affect the right to take.

From the findings of the Trial Judge, as set forth in his Memorandum Opinion, it is seen that he determined from the evidence before him that the petitioner had adopted a sufficient Relocation Plan for all persons to be displaced by this project.

He further found and held that the petitioner attempted to make available to the defendants adequate relocation assistance, which was refused by the defendants, and that the City of Cookeville was ready, willing and able to assist the Smith family in being relocated but that such assistance was refused. The Court found that the City was in substantial compliance with the Uniform Relocation Assistance Act and that the tract of land in question was essential for the construction of the public works project.

With these conclusions of the Chancellor, we are in agreement. It results that the assignment of error is overruled and the judgment of the Trial Court is affirmed.

Affirmed.

TODD, J., and SMITH, Special Justice, concur.